BARRY *against* RANDOLPH.

IN ERROR.

1810.

*Philadelphia;*
*Saturday,*
December 22.

UPON a writ of error to the Common Pleas of *Phila-delphia* county, the case was thus: An award was made by arbitrators in favour of *Randolph* the plaintiff below, from which the defendant appealed, and entered into the recognisance required by law; but no notice of the time and place of entering the appeal, and of the name of the surety, having been given to the plaintiff, in conformity with the following rule, the Common Pleas struck off the appeal. "*December* 16, 1809. Ordered that the party appealing from "the report of the arbitrators, shall give notice in writing "to the opposite party or his attorney, of the time and "place of entering the appeal, and of the name of the per-"son to be security on the appeal, and that four days shall "be allowed to the opposite party to file exceptions to the "sufficiency of the bail; and that notice of filing the excep-"tions shall be given in writing within the said four days "to the appellant or his attorney. And it is further ordered, "that the bail shall justify within four days after such no-"tice, before the prothonotary of the court, or a judge in "his absence; and that notice in writing of the time and "place of such justification of bail, shall be given to the op-"posite party or his attorney." This rule was rescinded on the 16th *June* 1810, after the appeal of the plaintiff in error had been struck off.

*Every court of record has an inherent power to make rules for the transaction of its business, not contradictory to the law of the land. Under this power the Common Pleas have a right to make a rule, that the party appealing from the award of arbitrators shall give his opponent notice of the time and place of entering the appeal, and the name of his surety, although the act of assembly does not require it.*

| 3 B | 277 |
| 26 SC | 436 |

*Phillips*, for the plaintiff in error, contended that the rule was invalid, because the 11th section of the arbitration law, 9 *St. Laws* 149., gives an appeal to the dissatisfied party "under the rules, regulations, and restrictions" therein set forth; but there is no requisition of notice to the opposite party or his attorney. The Common Pleas seem to have been of the same opinion, by rescinding the rule.

*Shoemaker contra.* The Common Pleas found it impossible to do justice to either party without the rule. The appellee was liable to imposition by getting merely sham bail upon the

appeal; and the appellant might lose his appeal altogether, if his antagonist might file exceptions after the time of the appeal had elapsed. They had power to make the rule, under their general authority to institute all such regulations, not contrary to law, as they think necessary or expedient to facilitate business.

TILGHMAN C. J. The only question in this case, is, whether the court of Common Pleas had power to make the rule, obliging the appellant to give notice of the time and place of entering the appeal and of the names of the sureties. Every court of record has an inherent power to make rules for the transaction of its business, provided such rules are not contradictory to the law of the land. The act of assembly on which this question arises, directs, in sections 11th, 12th, and 13th, that the party appellant shall within fifteen days after the entry of the award of the arbitrators on the docket, enter his appeal with the prothonotary, and that he shall within the same period, enter into a recognisance, with one or more sufficient sureties, with the prothonotary, the condition of which shall be as mentioned in the act. But who is to judge of the sufficiency of those securities? No person being expressly mentioned, it must be intended, that it must be judged of by the court in which the action is depending. It is reasonable therefore that the court should have power to lay down some rule for the better conducting of this business, especially as the appeal may be entered, and security offered, at a time when the court is not sitting. All that is required by the rule, is, that before the recognisance is entered, the adverse party shall have notice of time and place, and of the names of the persons intended to be offered as securities, in order that he may have an opportunity of inquiring into their circumstances. There is no hardship in this. Indeed the rule seems calculated as much for the interest of the appellant as his adversary. For if the appellant was to enter insufficient security, without affording the adverse party an opportunity of objecting within the fifteen days, and after the expiration of the fifteen days, the security was to be objected to, and proved to be insufficient, the appellant would be absolutely cut off from his appeal. Whereas this rule affords the means of putting

him on his guard, and enabling him to find good security in time, if the first prove insufficient. Finding nothing then unreasonable or against law in the rule of the court of Common Pleas, I am of opinion that the judgment should be affirmed.

YEATES J. It has been objected by the counsel of the plaintiff in error, that the court of Common Pleas had no power to make their rule of practice of the 16th *December* 1800, the law of the 25th *September* 1786 extending only to this court.

Independently of all authorities to be found in the books, it is self-evident, that justice could not be administered in an orderly manner, under a complex system of laws, without rules regulating the practice of the courts of justice. These courts must necessarily have the power of framing such rules, as they may think best calculated to carry the laws into execution with convenience and despatch. All courts must have stated rules to go by; which may be altered at pleasure, as they may be found best to answer the public good. 1 *Stra.* 315., 1 *W. Bla. Rep.* 264. Courts possessed these powers antecedently to any act of the legislature on the subject. A familiar instance may be given.—We find amongst the rules of this court, established in *January* term 1788, a regulation, that on the removal of the proceedings on a road by *certiorari*, this court will not enter into the merits of the road, unless the sessions have exceeded their jurisdiction, or have erred in point of law, or proof be made of corruption or partiality in the justices below, or of fraud or undue practice in the parties or viewers. A rule of the same kind precisely subsisted before the *American* revolution. It is true no rule can be made, which would devest a citizen of any legal right; but that objection does not hold in the present instance. Such a regulation, I apprehend, tends to facilitate the execution of the true intention of the legislature, by securing to the plaintiff a sufficient surety to answer his demand in the event of the judgment of the justice being affirmed; and though this rule has been rescinded on the 16th *June* 1810, yet as the court of Common Pleas had a right to frame the rule, and the defendant did not think

1810.    proper to conform thereto, I am of opinion that they were

BARRY    well justified in striking off the appeal.
  v.              I think the judgment of the court of Common Pleas should
RANDOLPH.   be affirmed.

> BRACKENRIDGE J. gave no opinion, having been absent
> at *Nisi Prius* during the argument.

Judgment affirmed.